Nos. 26-6479, 26-6481, 26-6484, 26-6485, 26-6487, 26-6490, 26-6551, 26-6554, 26-6570, 26-6997, and 26-7055

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

NATIVE VILLAGE OF HOOPER BAY, et al., FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, et al.
*Plaintiffs/Appellees/Cross-Appellants*

and

DEFENDERS OF WILDLIFE
*Plaintiff/Appellee*

v.

DOUG BURGUM, et al., KING COVE CORPORATION
*Defendants/Appellants*

and

STATE OF ALASKA
*Intervenor-Defendant/Appellant*

---

On Appeal from the United States District Court for the District of Alaska, Case No. 3:26-cv-00316 - SLG Hon. Sharon L. Gleason, District Judge

---

# APPELLANT KING COVE CORPORATION et al's FIRST BRIEF ON CROSS APPEAL

---

James F. Clark
Alaska Bar No. 6907025
Law Offices of James F. Clark
1109 C Street
Juneau, Alaska 99801
907.723-69522 (office)
jfclarkiii@gmail.com

*Attorney for Appellants King Cove Corporation. et al.*

TABLE OF CONTENTS

I. INTRODUCTION. .....1

II. STATEMENT OF JURISDICTION .....5

III. ISSUES PRESENTED .....5

IV. STATEMENT OF THE CASE .....5

V. SUMMARY OF ARGUMENT .....9

A. Title XI of ANILCA Does not Apply to an ANILCA § 1302 (h) Land Exchange .....9

B The Land Exchange Agreement Does not Violate the Refuge Act .....11

VI. STANDARD OF REVIEW .....11

VII. ARGUMENT .....12

A. Introduction Title XI Does not Apply to a 1302 (h) Land Exchange .....12

B. The District Court's "Critical First Step" Test for Tying The Title XI Process to an ANILCA § 1302 (h) Land Exchange Would Change and Complicate Land Exchanges in Ways Not Contemplated or Intended by Congress .....14

C. The District Court Findings are Inconsistent With ANILCA Title XI's Statutory Language .....15

D. By Statutory Definition Once The Land Exchange Occurs, any Future Road Would be Built on Private Land, not Through a CSU. Title XI's § 1104 Process does not Apply to Private Land. .....18

E. The Majority of a Ninth Circuit Panel Found That Title XI Does not Apply to an ANILCA § 1302 (h) Land

Exchange ........................................................................ 21

F. ANILCA §1302 (h)'s "Notwithstanding Any Other Provision of Law" Language Exempts ANILCA § 1302 (h) from Title XI ........................................................................ 22

G. The Land Exchange Agreement Does not Violate The Refuge Act ........................................................................ 25

VIII. CONCLUSION ........................................................................ 26

CERTIFICATE OF COMPLIANCE ........................................................................ 27

CERTIFICATE OF SERVICE ........................................................................ 27

# TABLE OF AUTHORITIES

## CASES

*BedRoc Ltd., LLC v. United States* 541 U.S. 176, 183 (2004) ................................17

*Center for Biological Diversity v. Zinke*, 868 F.3d 1054, 1057 (9th Cir. 2017) .....11

*Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) ......................................25

*City of Angoon v. Marsh,* 749 F.2d 1413, 1417 (9th Cir. 1984)...............................20

*Friends et al v. Secretary Deb Haaland et al. v. King Cove Corporation and the State of Alaska,* 29 F.4th 432, 443-444 (9th Cir. 2022)....................3, 15, 21

*Friends of Alaska National Wildlife Refuges v. Haaland,* 54 F.4th 608 (9th Cir. 2022) .........................................................................3, 15, 21

*Jane Doe No. 1 v. Backpage.Com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016) .............22

*Marathon Oil v. U.S.*, 807 F.2d 759, 765 (9th Cir. 1986) ......................................11

*Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 376-77 (1989)..................11

*Or. Natural Res. Council v. Thomas,* 92 F.3d 792,797 (9th Cir. 1996) ..................23

*Seven County Infrastructure Coalition et. al. v. Eagle Couty Colorado et al*, 605 U.S. 168 (2025)...............................................................................................11

*Shomberg v. United States*, 348 U.S. 540, 547-48 (1955).......................................25

*Sosa v. Alvarez–Machain,* 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004)..............................................................................................22

*Sturgeon v. Frost,* 139 S. Ct. 1066, 1077 (2019 ......................................... 10, 18-19

*Tyonek Native Corp. v. Secretary of Interior,* 836 F.2d 1237, 1240 (9th Cir. 1988).........................................................................................................12

*United States v. Crooked Arm*, 788 F.3d 1065, 1075 (9th Cir. 2015) .....................18

*United States v. Novak,* 476 F.3d 1041, 1048 (9th Cir. 2007) (en banc) ........ 23

*Yazzie v. U.S. EPA*, 851 F.3d 960, 968 (9th 2017) ........ 12

**FEDERAL STATUTES**

5 U.S.C. § 706(2)(A) ........ 11

16 U.S.C. § 3101 ........ 5

28 U.S.C. § 1291 ........ 5

28 U.S.C. § 1331 ........ 5

**OTHER AUTHORITIES**

Alaska National Interest Lands Conservation Act (ANILCA) ........ *Passim*

Federal Rule of Appellate Procedure 4(a)(1)(B) ........ 5

Omnibus Public Land Management Act of 2009 (OPLMA) ........ 2, 16

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Appellants inform the Court that: The King Cove Corporation is an Alaska Native Village Corporation organized under the laws of the State of Alaska and the Alaska Native Claims Settlement Act, 43 U.S.C 1601 et. seq. The City of King Cove is a first-class city operating in accordance with Alaska statutes. Neither the King Cove Corporation nor the City of King Cove offers shares to the public;

DATED this 12th day of November 2026.

By *s/James F. Clark*
James F. Clark
Attorney for King Cove Corporation

# I. INTRODUCTION

King Cove Corporation, the City of King Cove (collectively KCC), and the lands of the Native Village of Belkofski (Belkofski) and the Agdaagux Tribe are located on the Alaska Peninsula, which reaches out to the Aleutian Islands in southwest Alaska. The Alaska Peninsula separates the Pacific Ocean from Bristol Bay, an arm of the Bering Sea. The Izembek National Wildlife Refuge (Refuge) is also located on the Alaska Peninsula. The pertinent part of the Refuge lies on a narrow isthmus, the Izembek isthmus, which separates the Bering Sea from the Pacific Ocean at Cold Bay.

King Cove and the City of Cold Bay are both located adjacent to or near the Refuge on opposite sides of the isthmus, immediately north of Cold Bay and are separated by the Refuge. King Cove has approximately 800 residents, of whom one-third are Alaska Natives. King Cove is the home of two federally recognized tribes, the Agdaagux Tribe, and the Native Village of Belkofski. Cold Bay is a very small community of about 150 residents located approximately 18 miles from King Cove.

The Alaska Peninsula has been inhabited for over 4000 years by the indigenous Aleut and other people who live in the area. Local residents continue to utilize the Izembek isthmus for subsistence hunting and gathering along historic roads and trails that have existed long before the Alaska National Interest Lands Conservation Act (ANILCA) § 303(3)(A) designated it as a Refuge and a significant

portion as wilderness by ANILCA § 702(6). There are also military roads on the isthmus that were constructed during World War II which traverse the now-designated Refuge and wilderness area.

Establishment of a road corridor connecting King Cove and Cold Bay has been advocated by King Cove residents since at least the 1960s. A road would provide safe, reliable, and affordable access to Cold Bay and its all-weather airport. The Cold Bay airport has the fourth longest runway in Alaska and would provide far better assurance of travel to Anchorage for personal safety, medical, and health purposes than Kin Cove's short runway with its mountainous terrain, cross-winds, and adverse weather.

Following decades of emergencies and efforts to access the vital all-weather airport in Cold Bay, Congress sought to address King Cove's transportation concerns in the Omnibus Public Land Management Act of 2009 ("OPLMA").[1] In OP:MA Congress directed the Secretary to determine whether a land exchange and road construction within Izembek would be in the public interest. Following a review Secretary Jewell denied the request in 2013.

Nevertheless, KCC continued to request the Department of Interior (DOI) to enter an equal value land exchange pursuant to the specific authority set out in ANILCA § 1302(h) for such exchanges.

---

[1] Pub. L. No.111-11, Title VI, Subtitle E, Sta.911, 1117-83 (2009).

Former Secretaries Zinke and Bernhardt executed land exchanges in 2017 and 2019 respectively for a land corridor to allow for the future permitting, funding, and construction of a road to connect King Cove with Cold Bay. Secretary Zinke's exchange was determined to be legally insufficient by the district court for the District of Alaska on March 29, 2019. A divided panel of the 9th Circuit upheld Secretary Bernhardt's 2019 land exchange in a 2022 Opinion "*Friends et al v. Secretary Deb Haaland et al. v. King Cove Corporation and the State of Alaska*," 29 F.4th 432, 443-444 (9th Cir. 2022) vacated by an en banc Order Friends of Alaska *National Wildlife Refuges v. Haaland*, 54 F.4th 608 (9th Cir. 2022).[2]

In October 2025, Secretary Burgum entered into the Exchange Agreement currently before this Court to trade 490 acres in the Refuge for 1,739 acres of KCC lands and the relinquishment of 5430 acres of KCC's selection rights within the Refuge to provide a corridor for a future road.[3] The United States paid KCC $48,050 to equalize the exchange.[4] The Bureau of Land Management then issued a patent to

[2] The Case was vacated as moot by the En Banc Panel when Secretary Haaland abruptly withdrew the 2019 Land Exchange Agreement in March 2023. The Secretary withdrew the Land Exchange Agreement after briefing and oral argument, but before the En Banc Panel submitted its Opinion.

[3] AR-LE_000180-91, AR-LE_000016

[4] AR-LE_000393-96

KCC for the land within the corridor,[5] and KCC issued a warranty deed to the United States.[6]

The Secretary issued a document (Decision Document) explaining his decision.[7] The Secretary described his decision as "allowing KCC to pursue construction and development of a road."[8] (Emphasis added). He explained that "[t]he exchange would have major beneficial effects to the economic and social needs of the State of Alaska" and stated he had appropriately balanced those interests with conservation and subsistence.[9] The Secretary relied on ANILCA § 1302(h) as the authority for the exchange.[10]

King Cove Corporation and the City of King Cove (collectively KCC) herein appeal those portions of the district court for the District of Alaska's August 18, 2026, Order on which it ruled against KCC, the State of Alaska, and the Federal Government on certain issues. Specifically, KCC maintains that the district court erred in deciding: 1) that Title XI of the ANILCA applies to an ANILCA § 1302 (h) Land Exchange; (See pages 36-46 of district court's Decision and Order); and 2) that the Secretary of Interior violated the Refuge Act failing to determine whether the

---

[5] AR-LE_000397-400.
[6] AR-LE_000393-96
[7] AR-LE_000001-57
[8] AR-LE_000038. It did not authorize a road. AR-LE_000001, 000013, 000023, and 000033.
[9] AR-LE_000034-40.
[10] AR-LE_000030.

Refuge lands were suitable for disposition before conveying those lands to KCC in an ANILCA § 1302 (h) Land Exchange. (See pages 76-83 of district court's Decision and Order).

KCC requests this Court to reverse the district court's order, vacate the court's vacatur of the Secretary's land exchange approval, and remand to the district court for further proceedings.

## II. STATEMENT OF JURISDICTION

(a) The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Appellees' claims arose under ANILCA, 16 U.S.C. §§ 3101 *et seq*., the APA, 5 U.S.C. §§ 701-706, the Refuge Act, 16 U.S.C. § 688dd, the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq,*. the Endangered Species Act 16 U.S.C. §§ 1531 *et. seq*., and the Wilderness Act, 16 U.S.C. §§ 1131, *et seq*. 1-ER-14-15.

(b) The district court's judgment was final because it resolved the litigation on the merits and vacated the Land Exchange. 1-ER-90. This Court has jurisdiction under 28 U.S.C. § 1291.

(c) The judgment was entered on August 19, 2026. 1-ER-91; 1-ER-92; 1-ER-93. KCC filed its Notices of Appeal on October 1, 2026. The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(B).

## III. ISSUES PRESENTED

A. Does Title XI of The Alaska National Interest Lands Conservation Act (ANILCA) apply to an ANILCA § 1302 (h) Land Exchange?

B. Did the Secretary of Interior violate the Refuge Act by failing to determine whether the Refuge lands were suitable for disposition before conveying those lands to KCC in an ANILCA § 1302 (h) Land Exchange?

## IV. STATEMENT OF THE CASE

A. KCC's Efforts to Achieve Road Access from King Cove to Cold Bay

This case is about the federal government's consideration of a Presidential policy[11] intended to uphold the promises and purposes of the Alaska Native Claims Settlement Act[12] (ANCSA) and ANILCA[13] with vulnerable Alaska Natives, and to implement the federal government's trust responsibilities regarding those Alaska Natives by providing them safe, affordable access to health care and other amenities of life consistent with their right to self-determination.

---

[11] See Paragraph 3 (b) (xi) Executive Order 14153 dated January 20, 2025, "Unleashing Alaska's Extraordinary Resource Potential:" "(xi) facilitate the expedited development of a road corridor between the community of King Cove and the all-weather airport located in Cold Bay;"
[12] Public Law 92-203 Dec. 18, 1971; 85 Stat. 688.
[13] Public Law 96-487 Dec. 2, 1980; 94 Stat. 2373.

For context, as Secretary Burgum points out in the Decision Document KCC's access and other needs can be met by impacting a very small part of the Refuge:

> The Izembek Refuge contains approximately 310,000 acres with important resource values, as discussed in Section 2.2 above and Section 3.2 of the 2024 Draft SEIS. The conveyance of the U.S. Exchange Lands to KCC will remove approximately 484 surface acres of land from the Izembek Refuge (approximately 0.16 percent of the total). Of these, 336 acres are currently located within designated wilderness, which contains a total of approximately 308,000 acres (approximately 0.11 percent of the total).[14]

Moreover, this is not a case about pristine untrammeled wilderness to be impacted for the first time by a 13-mile, one-lane gravel road. While there is no dispute that this is an area of abundant and diverse wildlife that deserves protection[15], it is also true that the Izembek Refuge at one time a United States Air Force bombing range (currently containing unexploded ordnance) and was crisscrossed by miles of jeep trails to hunting cabins[16] during World War II:

> 1. In 1929, the area now known as Cold Bay was designated a Naval Reservation Area. As tensions mounted over World War II, the construction of an airplane runway began, and Fort Randall was commissioned in 1942. At its height, several thousand soldiers were stationed at Fort Randall. …. Additional evidence remains on the landscape: abandoned roads that have been revegetated, dugouts and

[14] Decision Document at pp. 25-26; AR-LE_000025-26.

[15] See the mitigation measures to reduce the environmental impacts from the road on the area at pages 19 – 23 of the Decision Document. AR-LE_000019-23.

[16] For the convenience of hunters, tourists, and local Cold Bay residents Frosty Bay road extends 13.9 miles from downtown Cold Bay. The last seven miles of the road was "very stemmed" out of the Izembek Refuge Wilderness.

building materials from the barracks, buried equipment, and unexploded ordinances. (Decision Document at page 2; AR-LE_000007).

2. [T]he 2012 Alaska Federal Lands Long Range Transportation Plan documented over 70 miles of roads (63 miles of gravel roads and 8 miles of dirt roads) that had been constructed across the Izembek isthmus by the military during World War II, and the land requested for a road corridor aligns with these historic roads where possible. During the period of military operations at Cold Bay, overland travel across the Izembek isthmus was possible and the communities of King Cove and Cold Bay were connected by jeep trail. (Land Exchange Agreement at page 2; AR-LE_000061).[17]

3. [P]ortions of the U.S. Exchange Lands and KCC Exchange Lands are located within a Formerly Used Defense Site (FUDS) (Land Exchange Agreement at page 3; AR-LE_000062).

Just as the portions of the U.S. Exchange Lands and KCC Exchange Lands located within the Formerly Used Defense Site (FUDS) have recovered from the impacts of military operations and jeep trails to become the important wildlife areas Plaintiffs describe, it is reasonable to conclude that the area will recover from two to three years of carefully supervised and mitigated road construction and not be unduly impacted by the use of the narrow corridor footprint thereafter. The environmental requirements in the law and in the Land Exchange Agreement and

[17]Although Izembek Refuge and Izembek Wilderness have significant resource values, they are not pristine or untrammeled areas. There are approximately 35 miles of dirt and gravel roads within the Izembek Refuge, including some within a portion of the Izembek Wilderness. In addition, portions of the Izembek Refuge lie within the Cold Bay/Fort Randall Formerly Used Defense Site with current and ongoing cleanup projects overseen by the U.S. Army Corps of Engineers (USACE) in collaboration with the Service. (Decision Document at pages 2-3; AR-LE_000002-000003.

the continued careful management of this area by the US Fish & Wildlife Service (FWS) will protect the area's wildlife. Moreover, FWS has experience managing roads in Refuges. There are more than 15,500 miles of road in the 560 Refuges in the United States, including in Wilderness Areas.[18]

What differentiates ANILCA from the Refuge Act, and other statutes that Plaintiffs-Appellees claim are violated by the 2025 Land Exchange, is that ANILCA §§ 1302(h) and 101(d) require the Secretary to balance environmental impacts with socio-economic impacts when making a Land Exchange with Alaska Native Corporations. The Refuge Act, for example, speaks only of protecting natural resources, and does not require balancing the protection of those resource values with protection of the health and well-being of Alaska Natives at King Cove.

Plaintiffs-Appellees Friends of the National Wildlife Refuges, Defenders of Wildlife, and Native Village of Hooper Bay *et al* filed Complaints in the district court for the District of Alaska in November 2025, alleging harms due to potential future road construction, even though the Decision Document expressly says multiple times that the 2025 Agreement does not authorize road construction. (Decision Document at pages 1, 23, and 33).[19]

---

[18] For example, Kofa, Blackwater, Medicine Lake, Mingo, St. Marks, Crab Orchard, Bosque del Apache, and Pea Island Refuges.

[19] Decision Document at pages 1, 13, 23, and 33; AR-LE_000001, 000013, 000023, and 000033.

On August 18, 2026, the district court entered a Decision and Order that vacated the 2025 Exchange Agreement, holding primarily that the decision to enter the exchange was unlawful under ANILCA'S Title XI, which includes a framework for approving or disapproving of a road on federal public land. (Docket 44). The district court also held that the Secretary violated the Refuge Act by failing to determine whether the Refuge lands were suitable for disposition before conveying those lands to KCC in an ANILCA § 1302 (h) Land Exchange.

The federal defendants, the State, and KCC timely filed their Notices of Appeal with this Court.

## V. SUMMARY OF ARGUMENT

### A. Title XI of ANILCA Does not Apply to an ANILCA § 1302 (h) Land Exchange. (See pages 36-46 of District Court's Decision and Order) for The Following Reasons:

1. ANILCA, Title XI's §1102(4)(B) provides that:

> Any [transportation or utility] system described in this subparagraph … shall be approved or disapproved in accordance with the procedures set forth in this title [XI].

Secretary Burgum was not required to follow the Title XI process because the land exchange occurred pursuant to ANILCA § 1302 (h) which is not "applicable law" as defined by ANILCA § 1102.

a. ANILCA § 1302 (h) is not applicable law because it limits the authority of the Secretary solely to exchanging land - it does not allow him/her to authorize a transportation or utility system (TUS). The absence of such

authority in ANILCA § 1302 (h) means that it does not meet ANILCA § 1102's definition of "applicable law."

b. ANILCA § 1102, limits application of Title XI to actions under "any law of general applicability." As the Supreme Court in *Sturgeon* noted, Congress intended the phrase "law of general applicability" to apply to laws like "the Clean Air Act, the Water Pollution Control Act, [and] U. S. Army Corps of Engineers wetlands regulations."[20] ANILCA § 1302 (h) is not a law of "general applicability" and thus does not meet ANILCA § 1102's definition of "applicable law."

2. The fact that the Secretary anticipated KCC would seek permits and approvals for a road on the land KCC received in the exchange after the exchange does not change this result because road construction cannot be authorized by ANILCA § 1302 (h) and it thus does not meet ANILCA § 1102's definition of "applicable law."[21]

3. Title XI applies to transportation systems within conservation system units (CSU). Land transferred to an ANC in an ANILCA § 1302 (h) land exchange becomes private land pursuant to ANILCA § 103 (c) and is no longer "within any conservation system unit."[22] Nor does it later become subject to Title XI.[23] The land

---

[20] *Sturgeon* v. *Frost*, 139 S. Ct. 1066, 1085 (2019) (quoting S.REP. NO. 96-413 at 303).
[21] See ftnt, 2 *supra*.
[22] *Sturgeon v. Frost*, 139 S. Ct. 1066, 1078 (2019) states: "No lands that are conveyed to the State, to any Native Corporation, or to a private party shall be subject to the regulations applicable solely to the public lands within such units."
[23] *Sturgeon v. Frost. Id.* at 1085: "Park Service regulations—like the hovercraft rule—do not apply to non-public lands in Alaska even when those lands lie within national parks. Section 103(c) "deem[s]" those lands outside the parks and in so doing deprives the Service of regulatory authority."

conveyed to KCC is thus not subject to Title XI.

4. ANILCA § 1302 (h)'s general "Notwithstanding Any Other Provision of Law" applies to ANILCA § 1104 (a)'s limited "Notwithstanding Any Other Provision of Applicable Law" language and thus exempts ANILCA § 1302 (h) from Title XI.

### B. For Reasons set out in The Secretary's First Brief in This Case, Which KCC Incorporates by Reference, The Land Exchange Agreement Does not Violate The Refuge Act.

## VI. STANDARD OF REVIEW

KCC hereby adopts and incorporates by reference the Standard of Review set out in the Secretary's First Brief in this case.

## VII. ARGUMENT

### A. Introduction: Title XI Does not Apply to a § 1302 (h) Land Exchange.

This issue concerns the Secretary of Interior's authority to make a land exchange under § 1302 (h) of ANILCA. As written, the 2025 Land Exchange Agreement (2-ER-154 – 2-ER-162) and supporting Decision Document 2-ER-95 – 2-ER-151 authorize only the land exchange. The Decision Document expressly states that the Land Exchange does not commit to, or authorize, construction of a road. (See Secretary's Decision at pages 1, 13, 23, and 33. 2-ER-1, 2-ER-13, 2-ER-23, and. 2-ER-33.)

Nevertheless, in its August 18, 2026, Decision and Order the Court vacated

the Land Exchange because it found that: "While the Exchange itself does not explicitly 'authorize' the construction of the road, it conveys a portion of the Izembek Refuge for the express purpose of enabling that proposed road to be built and dictates the exact route the road will take through the Izembek Refuge."[24] Based on that finding the Court concluded that: "because without the Exchange the transportation system cannot, in whole or in part be established or operated, the Exchange constitutes the critical first step in the authorization of the roads construction."[25] The Land Exchange was thus vacated because the Court concluded that it was not made in accordance with the Title XI process.

Because the "critical first step" theory is inconsistent with the language and Congressional intent of ANILCA § 1302 (h), KCC respectfully submits that the district court erred in applying Title XI of ANILCA to the ANILCA § 1302 (h) Land Exchange for this and the reasons that follow.[26]

---

[24] Decision and Order at pages 40 – 41.

[25] Decision and Order at page 41- internal quotations eliminated.

[26] Prior Secretary David Bernhardt reached this very same conclusion in his 2019 Decision:

> I have also concluded that Title XI of ANILCA is not relevant to the land exchange envisioned by the Department. Title XI applies to any Federal 'authorization (including but not limited to, any right-of-way, permit, license, lease, or certificate) without which a transportation or utility system cannot, in whole or in part, be established or operated.' While a King Cove land exchange agreement envisions that the KCC may construct a road, it is not an 'authorization' to do so. Furthermore, all of the examples within the scope of 'authorization' are for uses of

### B. The District Court's "Critical First Step" Test for Tying The Title XI Process to an ANILCA § 1302 (h) Land Exchange Would Change and Complicate Land Exchanges in Ways not Contemplated or Intended by Congress.

In KCC's case, the Secretary's Decision made it clear that KCC would be pursuing the permitting and financing for a road on its newly patented private land corridor after the land exchange. But every land exchange participant, as KCC does here, would have a plan for using the land acquired from the Federal government after an ANILCA §1302 (h) exchange. Otherwise, why make an exchange?

If the district court's decision is upheld will the agency be obligated to inquire into an applicant's purpose in entering a land exchange? If so, this will be a Court-directed requirement not present in the statute. Or, what if the purpose changes five years later? Does Title XI apply because KCC was upfront in saying it wanted to build a road on its private lands, but Title XI would not apply if KCC omitted that intent, or developed that intent later?

---

land that remains in Federal ownership. Unlike a right-of-way or lease or permit, the exchange will remove land from Federal ownership, and should KCC never construct a road, the land would not revert to Federal ownership. Moreover, the provisions of Title XI do not apply to actions taken by the Secretary under the unique exchange authority provided to him under § 1302 (h) of ANILCA, and that authority exists "notwithstanding any other provision of law. 16 U.S.C. § 3192 (h)." Decision Document at 14 – 15, ftnt. 47.

Had Congress intended to apply Title XI to an ANILCA 1302 (h) land exchange that could turn out to be the "critical first step" in construction of a TUS, Congress would have necessarily required the Secretary to have the applicant explain its intended use of the land it was to receive as a condition of its application. It is telling that there is no language in ANILCA § 1302 (h) or Title XI requiring or even authorizing the Secretary to make such an inquiry.

Indeed, the majority of the 9th Circuit panel in *Friends v Haaland*.[27] decided this very issue adversely to the core of the district court's reasoning:

> Plaintiffs attempt to resist this conclusion by arguing that Title XI applies only when the Secretary enters a land exchange for the purpose of enabling the construction of a transportation or utility system. ***But nothing in the statute suggests that the Secretary's subjective intent is relevant. All that matters is whether section 1302 (h) authorizes construction of a road within a conservation system unit, and it does not***. (emphasis added).

Were an agency required to determine whether a party's intended use of the land it was to receive in an exchange is the "critical first step" to a TUS it will become the subject of litigation. For example, an opponent to the exchange will allege that the agency violated the APA by failing to find that the potential use to which a party could put the land it will receive in a land exchange would be a TUS. Parties to an exchange will refuse to explain their purpose in participating.

### C. The District Court Findings are Inconsistent With ANILCA Title XI's Statutory Language.

[27] See ftnt. 2 *supra*.

Secretary Burgum authorized a land exchange intended to provide KCC land for which it could seek the financing and permits to construct a road in a separate permitting process A road was expressly not authorized, nor did the 2025 Land Exchange authorize any other ground disturbing activity.[28] Accordingly, this is unlike the situation faced by Secretary Jewell in 2013 in which Congress actually authorized road construction contingent on her approval of the land exchange.[29]

1. ANILCA § 1302 (h) is Not a Law of "General Applicability" as described in *Sturgeon* and Thus is Not "Applicable Law" as Defined by ANILCA § 1102.

Section 1102 (1) Defines the term "applicable law" to mean "any law of general application (other than this title) under which any Federal department or agency has jurisdiction to grant an authorization (including but not limited to any right of way, permit, license, lease or certificate) without which a transportation or utility system cannot in whole or in part be established or operated." As the Supreme Court in *Sturgeon* noted, Congress intended the phrase "law of general applicability" to apply to laws like "the Clean Air Act, the Water Pollution Control Act, [and] U. S. Army Corps of Engineers wetlands regulations S. Rep. No. 96–413, p. 303 (1980).

[28] See ftnt, 19 *supra*.

[29] See OPLMA § 6402 (d)(1): "[T]o carry out the land exchange under subsection (a), **the Secretary shall determine that the land exchange (including the construction of a road between the City of King Cove, Alaska, and the Cold Bay Airport)** is in the public interest)." (Emphasis added). See also §§ 6403 (c), 6405 (a), and 6406 (a). Pub. L. No. 111-11, Title VI, Subtitle E, 123 Stat. 991 (Mar. 30, 2009).

But that would not be so of regulations applying only to parks."[30] ANILCA § 1302 (h) applies only to ANILCA land exchanges and is thus not a law of "general applicability" under *Sturgeon.* It thus does not meet ANILCA § 1102's definition of "applicable law."

2. Conveyance of a Corridor within the Izembek Refuge is not an Authorization for a Road under ANILCA § 1102 (4)(A) and (B), and Thus is Not "Applicable Law" as Defined by ANILCA § 1102.

Section 1102 (4)(A) defines a "transportation or utility system" as "any type of system described in subparagraph (B). Subparagraph (B) provides a list ((B) (i) – (vii)) of specific structures among which are "(vii) Roads, highways, railroad tunnels, tramways, airports, landing strips, docks, and other systems of general transportation." While conveyance of a ***corridor*** within the Izembek Refuge may precede construction of a road it is not a road as defined by ANILCA § 1102 (4)(A) and (B) – particularly when road construction is ***expressly*** not authorized.[31] Nor is it a "system of general transportation."

The district court's decision requires the judicial addition of "any action that *could be* the "critical first step" in the building of a road" to the specific items listed in § 1102 (4)(B)(vii). Such an addition would expand the scope of the items listed in §1102 (4)(B) (i-vii) to include any item that could reasonably be argued to be a

---

[30] *Sturgeon* 139 S. Ct. at 1085 (quoting S.REP. NO. 96-413 at 303).
[31] See ftnt, 19 *supra.*

"critical first step" in building a road". Congress did not include such an item in its §1102 (4)(B) (i-vii) list.

Instead of adding "a critical first step" in building an expressly not authorized road to the list of specific systems set out in ANILCA § 1102 (4)(B)(vii), the district court should have assumed that Congress "listed" what it meant and meant what it "listed." (See *BedRoc Ltd., LLC v. United States* 541 U.S. 176, 183 (2004)). Finally, the *Expressio unius est exclusio alterius* canon of statutory construction presumes that when one or more things of a class is expressly mentioned, others of the same class are intentionally excluded. *United States v. Crooked Arm*, 788 F.3d 1065, 1075 (9th Cir. 2015).

Because a "corridor which could be the critical first step" in constructing a road is not listed in the § 1102 (4)(B) definition, it is not a "transportation system" and thus not subject to Title XI's § 1104 process.

**D. By Statutory Definition Once The Land Exchange Occurs, any Future Road Would be Built on Private Land, not Through a CSU. Title XI's § 1104 Process does not Apply to Private Land.**

Section 1302 (h) specifically authorizes the Secretary "in acquiring lands for the purposes of this Act to exchange lands (***including lands within conservation system units*** …)." (Emphasis added). Thus, the Secretary has specific authority to exchange the land within the Refuge. The exchange will remove the land transferred to KCC from Federal ownership. At that point, as described by ANILCA §103(c), it

will no longer be within the boundaries of a CSU and "the corridor to facilitate the building of a road" will no longer be subject to any possible definition under § 1102 (4) as a "transportation or utility system." *Sturgeon v. Frost*, 139 S. Ct. 1066, 1078 (2019)

KCC's ANILCA § 1302 (h) Land Exchange removed public land from the Refuge and conveyed it as private land to KCC. Once it is private land, KCC's land is not public land or part of the Izembek Refuge nor may it thereafter become public land or regulated as public land. Title XI's framework for federal approval or disapproval does not apply to KCC's private land. *Sturgeon* 139 S. Ct. at 1085.

The premise of Title XI is that private parties will need access "through public land" and Title XI exists to provide the framework for such access. The Title XI premise is without effect, and the Title XI procedures are of no purpose when the land is not "public land" held by the federal government. Private parties need no process to move through their own patented, private land.

Accordingly, Congress wanted to provide for access through the CSUs. It did not intend to apply the "protection" of the § 1104 process to private land within the Refuge following a land exchange. To the contrary, the district court's observation contradicts the specific language of § 103 (c), including the Supreme Court's interpretation of §103 (c) in *Sturgeon v. Frost*: 139 S.Ct 1066, 1078 (2019):

> As explained in Sturgeon I, "Section 103(c) draws a distinction between 'public' and 'nonpublic' lands within the boundaries of conservation

> system units in Alaska." 577 U. S., at __, 136 S.Ct., at 1071. Section 103(c)'s first sentence makes clear that only public lands (again, defined as most federally owned lands, waters, and associated interests) would be considered part of a system unit (again, just meaning a national park, preserve, or similar area). **By contrast, state, Native, or private lands would not be understood as part of such a unit, even though they in fact fall within its geographic boundaries. Section 103(c)'s second sentence then expressly exempts all those non-public lands (the inholdings) from certain regulations**—though exactly which ones, as will soon become clear, is a matter of dispute. (Emphasis added).

See also *Sturgeon, supra* at 1085:

> We held in an earlier part of this opinion that the Nation [River] is not public land. See *supra,* at 1078 – 1080. **And here we hold that it cannot be regulated as if it were. Park Service regulations—like the hovercraft rule—do not apply to non-public lands in Alaska even when those lands lie within national parks. Section 103(c) "deem[s]" those lands outside the parks and in so doing deprives the Service of regulatory authority. (Emphasis added).**

In *City of Angoon v. Marsh,* 749 F.2d 1413, 1417 (9th Cir. 1984) this Court allowed timber harvest to proceed because it found that land within the Admiralty National Monument belonging to a Native Corporation was outside the "protections" of the Monument due to §103 (c):

> Thus, section 103(c) was added to ANILCA immediately prior to its enactment as part of the legislative "fine-tuning" process for the express purpose of "specifying that only public lands (and not State owned or private lands) are to be subject to the conservation system unit regulations applying to public lands" and "to make clear that other particular provisions of the bill apply only to public lands." 126 Cong. Rec. H. 30498 (November 21, 1980) (supplementary material furnished by Rep. Udall).

In summary, the Land Exchange does not circumvent the §1104 process. It would be error to apply the §1104 process to non-CSU, private land within the geographic boundaries of the Refuge. First, §1302 (h) specifically authorizes the Secretary to transfer land out of a CSU when making a land exchange. Second, § 103 (c), as interpreted by *Marsh* and *Sturgeon,* shows that Congress did not intend the application of the §1104 process to private land that has been transferred out of a CSU into private hands. Third, ANILCA provides no authority for the Secretary to prohibit, or otherwise restrict, a post-exchange plan for land transferred from a CSU to a private owner.

### E. The Majority of a Ninth Circuit Panel Found That Title XI Does not Apply to an ANILCA § 1302 (h) Land Exchange.

In *Friends et al v. Secretary Deb Haaland et al. v. King Cove Corporation and the State of Alaska*, 29 F.4th 432, 443-444 (9th Cir. 2022) vacated by an en banc Order *Friends of Alaska National Wildlife Refuges v. Haaland*, 54 F.4th 608 (9th Cir. 2022)[32] the panel's majority determined that Title XI did not apply to an ANILCA §1302 (h) Land Exchange for the following reasons:

> Title XI defines an "applicable law" as "any law of general applicability ... under which any Federal department or agency has jurisdiction to grant any authorization (including but not limited to, any right-of-way, permit, license, lease, or certificate) without which a transportation or utility system cannot, in whole or in part, be established or operated." 16 U.S.C. § 3162(1). Section 3192(h) is not such a law because it authorizes the Secretary only "to exchange lands." Id. § 3192(h)(1). It

[32] See ftnt 2. *supra.*

> does not give him "jurisdiction to grant any authorization" necessary for a "transportation or utility system." Id. § 3162(1). To be sure, once lands are transferred, the recipient might use them to build a road. That, of course, is the purpose of the transfer at issue here. But under Title XI, a "transportation or utility system" includes only systems for which a "portion of the route of the system will be within any conservation system unit, national recreation area, or national conservation area." Id. § 3162(4)(A). Land transferred out of a conservation system unit in a land exchange is, by definition, no longer "within any conservation system unit." Id.; see also id. § 3103(c) ("No lands which ... are conveyed to the State, to any Native Corporation, or to any private party shall be subject to the regulations applicable solely to public lands within such units."); *Sturgeon*, 139 S. Ct. at 1078 (noting that ANILCA defines "public land" as "(almost all) 'lands, waters, and interests therein' the 'title to which is in the United States' " (quoting 16 U.S.C. § 3102(1)–(3))). Nor is any road later built on such land.

### F. ANILCA § 1302 (h)'s "Notwithstanding Any Other Provision of Law" Language Exempts ANILCA § 1302 (h) from Title XI.

Importantly, ANILCA § 1104 and §1302 (h) have different "notwithstanding any other provision of law" clauses. Section 1104(a) says "Notwithstanding any provision of ***applicable*** law" thereby limiting its application to provisions that fall within ANILCA § 1102(1)'s definition of "applicable law."[33] Section 1302 (h) isa broader "Notwithstanding ***any other*** provision of law" meaning that its scope is not limited and that it applies to all other ANILCA provisions. (Emphasis added). The different words have different meanings, as applied here, that should yield different

---

[33] ANILCA § 1102(1) defines the term "applicable law" to mean any law of general applicability (other than this title) under which any Federal department or agency has jurisdiction to grant any authorization (including but not limited to, any right of way, permit, license, lease, or certification without which a transportation or utility system cannot in whole or in part be established or operated.

results which must be recognized by the court.[34] (Emphasis added).

Because § 1302 (h) does not fall within the definition of "applicable law," (because § 1302 (h) does not give the Secretary jurisdiction to authorize a TUS as defined by § 1102(1)), the "notwithstanding" phrase of ANILCA §1104(a) does not apply to an ANILCA § 1302 (h) Land Exchange. However, the generally applicable "Notwithstanding Any Other Provision of Law" language of § 1302 (h) applies to Title XI thereby exempting an ANILCA § 1302 (h) land exchange from Title XI.

The district court reads the interaction of the "notwithstanding" phrases of § 1104(a) and § 1302 (h) differently. Citing *United States v. Novak*,[35] for the proposition that a court must give effect, where possible, to both provisions, the court then failed to do so:

> Here, both provisions can be given effect without conflict. Section 1302(h) authorizes land exchanges generally, while Title XI requires additional procedures when the purpose of the exchange is to effectuate the construction of a road through a wilderness area. And because the exchange is the critical first step in the authorization of the proposed

[34] The canons of statutory construction require that this difference in language be recognized. *Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (quoting 2A Norman J. Singer, Statutes and Statutory Construction § 46:06, at 194 (6th rev. ed.2000)) *Jane Doe No. 1 v. Backpage.Com,* LLC, 817 F.3d 12, 23 (1st Cir. 2016) ("The normal presumption is that the employment of different words within the same statutory scheme is deliberate, so the terms ordinarily should be given differing meanings.")

[35] 476 F.3d 1041, 1048 (9th Cir. 2007) (en banc) (citing *Or. Natural Res. Council v. Thomas,* 92 F.3d 792,797 (9th Cir. 1996)

> road. The Secretary was required to comply with both 1302(h) and Title XI.[36]

But the court's holding does not "gives effect … to both provisions." It reads ANILCA § 1302 (h)'s "notwithstanding any other provision of law" provision out of the analysis. It fails to account for or compare: 1) the limitations upon the applicability given to ANILCA § 1104(a) by § 1102(1)'s definition of "applicable law," and 2) the unlimited scope Congress gave to ANILCA § 1302 (h)'s "notwithstanding any other provision of law."

The district court's analysis misses or does not address the key language differences. Section 1102(1) defines "applicable law" for purposes of Title XI to mean "any law of general applicability (other than this title) under which "any Federal department or agency has jurisdiction to ***grant any authorization*** (including but not limited to, any right-of-way, permit, license, lease, or certificate) without which a transportation or utility system cannot, in whole or in part, be established or operated."

But ANILCA § 1302 (h) simply provides a means to acquire private land from a private party "for purposes of this Act." It does not give the Secretary jurisdiction

[36] Decision and Order at 45-46.

to "grant" a private party a "right-of-way, permit, license, lease, or certificate" or similar permission to establish a road.

Because the Secretary has no authority under § 1302 (h) to ***grant*** any of the authorizations listed in § 1102 (1), § 1302 (h) is not "applicable law" for purposes of the § 1104 process. (The fact that a road not currently authorized or permitted may ***result*** from the exchange in a future process is not a ***grant to establish or operate a road***). Accordingly, §1302(h) is not the "applicable law" to which § 1104 (a) refers by its "notwithstanding" phrase."

On the other hand, §1302 (h) says without limitation: "Notwithstanding ***any other*** provision of law." In the context here the words "***any other*** provision of law" clearly include § 1104 (a). Because there are no limitations on the §1302 (h) "notwithstanding phrase," §1302(h) is excluded by way of definition from the § 1104 (a) "notwithstanding applicable law" phrase." See *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (The "notwithstanding" phrase "clearly signals the drafter's intention that provisions of the `notwithstanding' section override conflicting provisions of any other section.") (citing *Shomberg v. United States*, 348 U.S. 540, 547-48 (1955)).

### G. The Land Exchange Agreement Does not Violate the Refuge Act.

KCC hereby adopts and incorporates by reference the arguments set out in the Secretary's First Brief in this case that explain why the 2025 Land Exchange Agreement does not violate the Refuge Act.

## VIII. CONCLUSION.

For the foregoing reasons KCC respectfully urges this Court to reverse and set aside the district court's order, vacate the court's vacatur of the Secretary's land exchange approval, and remand to the district court for further proceedings.

**RESPECTFULLY SUBMITTED** this 12th day of November 2026.

*s/James F. Clark*
James F. Clark
Alaska Bar No. 6907025
Law Offices of James F. Clark
1109 C Street Juneau, Alaska 99801
(907) 723-6952 (office)
jfclarkiii@gmail.com

Attorney for KCC

## CERTIFICATE OF COMPLIANCE FOR BRIEFS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND FORM 8

9th Cir. Case Nos. 26-6479, 26-6481, 26-6484, 26-6485, 26-6487, 26-6490, 26-6551, 26-6554, 26-6570, 26-6997, and 26-7055

The undersigned attorney certifies that:

1. This brief contains 6602 words and thus complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the type face volume of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Office Word 2010, font size 14 and Times New Roman type style.

Signature: /s/*James F. Clark*　　　　Date: November 12, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of November 2026 I caused to be electronically filed the foregoing Appellant KCC's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *James F. Clark*